UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
_____

| | |
|---|---|
| SOGEFI USA, INC., SOGEFI AIR & COOLING SYSTEMS, and SOGEFI ENGINE SYSTEMS MEXICO S de RL de CV, | Case No.<br><br>Hon. |
|         Plaintiffs, | |
| v | |
| BASF CORPORATION d/b/a BASF USA, BASF MEXICANA SA de CV, and BASF CANADA, | |
|         Defendants.<br>_____/ | |

Michael G. Brady (P57331)
Adam T. Ratliff (P79892)
WARNER NORCROSS + JUDD LLP
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
(313) 546-6000
mbrady@wnj.com
aratliff@wnj.com
*Attorneys for Plaintiffs*

## VERIFIED COMPLAINT

Plaintiffs Sogefi USA, Inc., Sogefi Air & Cooling Systems, and Sogefi Engine Systems Mexico S de RL de CV (together, "Sogefi") state the following for their verified complaint against Defendants BASF Corporation d/b/a BASF USA, BASF Mexicana SA de CV, and BASF Canada (together, "BASF"):

## Parties, Jurisdiction, and Venue

1. Sogefi USA, Inc. is a West Virginia corporation with its principal place of business in West Virginia. Sogefi USA, Inc. also maintains corporate offices in Michigan, from which it transacted most of the business at issue in this matter. Sogefi USA, Inc. operates a manufacturing plant in Pritchard, West Virginia.

2. Sogefi Air & Cooling Systems is a Canadian corporation that operates a manufacturing plant in Montreal, Quebec, Canada.

3. Sogefi Engine Systems Mexico S de RL de CV is a Mexican corporation that operates a manufacturing plant in Apocada, Nuevo León, Mexico.

4. BASF Corporation d/b/a BASF USA is a Delaware corporation with its principal place of business in Wyandotte, Michigan.

5. Upon information and belief, BASF Mexicana SA de CV is a Mexican corporation with its principal place of business in Mexico.

6. Upon information and belief, BASF Canada is a Canadian corporation with its principal place of business in Canada.

7. With respect to all of the actions outlined in this complaint, the Defendants worked in concert together and through the same BASF Corporation representatives in Michigan.

8. All of the parties' contracts applicable to this matter contain Michigan choice of law provisions.

9. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(3).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3).

**The Parties' Agreements**

11. Sogefi, as buyer, and BASF, as seller, are parties to seven long-term contracts for the supply of raw materials for use in automotive component parts, attached as Exhibit 1.

12. Sogefi's North American General Purchasing Terms and Conditions (the "GTC," attached as Exhibit 2) are incorporated into the contracts of supply by reference. (See Ex. 1.) The GTC, together with the contracts of supply are referred to as the "Agreements," and form the contracts between the parties.

13. Under the Agreements, Sogefi is obligated to purchase, and BASF is obligated to supply, Sogefi's requirements for several types of resin materials (the "Materials"), which Sogefi incorporates into the products Sogefi supplies just-in-time to its original equipment manufacturer ("OEM") customers, which includes Ford, General Motors, and Stellantis.

14. BASF supplies Sogefi's plants in West Virginia, Mexico, and Canada according to the Agreements.

15. Sogefi issued the Agreements to BASF, and BASF accepted the Agreements and the GTC through, among other things, manufacturing and shipping the Materials subject to the Agreements. (See Ex. 2, § 1(b).)

16. The Agreements have a term that lasts for the duration of the OEM's program production life, and BASF is expressly bound to continue supplying Sogefi's requirements as ordered for the duration of that term. (Ex. 2, §§ 3(a), 1(b).)

17. The Agreements require timely delivery of all Materials ordered by Sogefi:

> Time and quantities are of the essence under this Order. Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer, as set forth in this Order . . . . Failure to meet agreed delivery time and quantities shall be considered a breach of this Order and Seller shall pay to Buyer any damages or expenses imposed upon or incurred by Buyer as a result of such breach. [Ex. 2, § 3(f).]

18. This requires BASF to deliver all Materials ordered by Sogefi on time and in the quantities ordered. (See also Ex. 1, § 14.)

19. The GTC further requires BASF to indemnify Sogefi for BASF's breach of the Agreements:

> To the fullest extent permitted by law, Seller will defend, indemnify, and hold harmless Buyer . . . against all damages, claims, or liabilities and expenses (including attorneys' fees and other professionals' fees, settlements, releases and judgments) to the extent such damages, claims, or liabilities and expenses arise out of or relate in any way to Seller's representations, performance or obligations under this Order . . . . [Ex. 2, § 12(a).]

4

20. Recognizing the nature of the automotive industry and the need for just-in-time deliveries, the parties also agreed that money damages would be an inadequate remedy to Sogefi if deliveries are not made as required:

> In an action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies . . . breach of any agreement, order or the [GTC] . . . Seller acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of the Order and . . . Buyer shall be entitled to specific performance and injunctive equitable relief . . . as well as Buyer's costs and reasonable attorneys' fees. [*Id.* at § 11(b).]

21. The Agreements also expressly contemplate changes to the availability of raw materials needed by BASF to produce the Materials sold to Sogefi, and the parties agreed to contractually allocate that risk to BASF:

> Any delay or failure of either party to perform its obligations shall be excused if, and to the extent, that it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence. . . . A qualifying Force Majeure under this section will not include delays or failure by Seller to perform that were the result of, among other things, . . . changes in costs or availability of raw materials, . . . . [Ex. 2, § 18.]

### **BASF Breaches the Agreements**

22. In March 2021, BASF claimed "force majeure" on several of the Materials it provides to Sogefi. However, BASF's supplies to Sogefi were not materially affected, and BASF remained able to supply Sogefi's requirements for the Materials.

5

23. On October 21, 2021, BASF sent a letter to Sogefi in which BASF stated that an "increasing shortage of glass fiber" will affect BASF's ability to supply the Materials to Sogefi. In the letter, BASF estimated that the "overall supply" of the Materials to Sogefi will "be reduced for the next several months related to the increasing shortage of glass fiber," and that BASF had to "maintain Force Majeure" on the Materials.

24. Adjoining the letter, BASF also sent Sogefi representatives an email showing BASF's intent to "allocate" the Materials to Sogefi at volumes far below those ordered by Sogefi and those reflected as "firm" commitments in releases issued by Sogefi and accepted by BASF.

25. Recognizing the threat this breach would pose to Sogefi, Sogefi responded in writing the same day. Sogefi's October 21, 2021 letter rejected BASF's proposal to reduce shipments to Sogefi. Sogefi requested a meeting between the parties the next day, October 22, 2021.

26. As Sogefi requested, the parties met on October 22, 2021.

27. At that meeting, BASF representatives stated their intent to only supply about 50-60% of Sogefi's orders for November and December 2021.

28. Sogefi informed BASF representatives that this meant that Sogefi's production would be reduced by the same percentage, which, in turn, could affect Sogefi's customers in the same way.

29. In response, BASF indicated its true intention. BASF representatives stated that BASF actually could continue to supply Sogefi's requirements as ordered if, in exchange, Sogefi would agree to an unprecedented 120% price increase for the Materials. During Sogefi's ensuing attempts to negotiate, BASF would eventually lower its demand to what would amount to about a 75% price increase, but BASF refused to go lower.

30. By making this offer, BASF revealed that it was not impossible for BASF to supply Sogefi with Sogefi's requirements for the materials, and that instead BASF was willing to do so as long as Sogefi paid an increased price over the agreed-upon price contained in the parties' Agreements.

31. In other words, it appeared to Sogefi that BASF was attempting to leverage global supply chain stresses to secure an unwarranted price increase from Sogefi.

32. In response, Sogefi's counsel sent BASF a request for adequate assurances on October 23, 2021 under UCC § 2-609; M.C.L. § 440.2609.

33. In that letter, Sogefi requested that BASF adequately assure Sogefi that BASF would continue to supply the Materials in accordance with the parties' Agreements, which required BASF to ship according to Sogefi's releases.

34. Sogefi also reminded BASF that under the parties' Agreements the parties' had contractually allocated the risk of raw material shortages to BASF, and that this was thus an inadequate basis for BASF to claim force majeure.

35. BASF failed to supply Sogefi with a shipment that was required by the parties' Agreements to be delivered to Sogefi on October 25, 2021.

36. BASF then responded to Sogefi's letter on October 26, 2021, and in alarming fashion. In a letter from BASF's Assistant General Counsel, BASF rejected the premise that Sogefi's GTC—which are unambiguously incorporated into the Agreements—governed the parties' supply relationship, and instead stated that "BASF sells it [sic] products according to the BASF Corporation General Terms and Conditions of Sale." BASF did not provide any basis for this assertion.

37. Then, even more bizarrely, BASF claimed that "Sogefi and BASF have not entered into a contract." Not only did this directly contradict BASF's prior statement in the same letter that the parties contracted according to BASF's terms and conditions, but it suggested that BASF was not bound to supply Sogefi with *any* Materials at all.

38. Apparently, according to BASF, BASF had been gratuitously providing the Materials to Sogefi in exchange for payment for those materials for years without the parties having formed a contract under the UCC.

8

39. Following receipt of BASF's October 26 letter, Sogefi informed one of its primary OEM customers of the dispute between Sogefi and BASF. Sogefi's OEM customer agreed to pay the surcharges demanded by BASF in the near term, but only with respect to the Materials Sogefi uses in products Sogefi sells to that OEM. This interim solution also only covered BASF's demanded price increases for the month of November.

40. Sogefi has not been able to obtain similar arrangements from its other OEM customers.

41. On November 5, 2021, Sogefi's counsel responded to BASF's October 26 letter informing BASF that due to BASF's inability to assure Sogefi's supply beyond the end of November 2021, and in light of BASF's alarming statements contained in its October 26 letter, Sogefi required BASF's further assurances.

42. In that letter, Sogefi memorialized the parties' interim solution with respect to one of Sogefi's OEM customers, but requested BASF's acknowledgement that the parties did indeed have contracts and that BASF would continue to adhere to them while the parties sought solutions beyond the end of November and with respect to Sogefi's other customers.

43. BASF responded in a letter dated November 10, 2021, in which BASF reiterated its contention that it is not bound by the Agreements and that BASF's

sale of its products are instead governed by the "BASF Corporation General Terms and Conditions of Sale."

44. Further, rather than provide adequate assurances of performance as requested, BASF stated that it "will continue to look for alternatives to fairly and reasonably supply Sogefi and its other customers as much of their requirements as is possible" and that it "expressly rejects any obligation to Sogefi for any damages, charges, fees, claims or liability associated with its inability to supply any product under these circumstances whether based in contract, tort, any form of injunctive relief or any other legal theory whatsoever."

45. BASF has thus already breached its delivery obligations under the parties' Agreements once, and has also fully repudiated the parties' Agreements on multiple occasions, refusing to provide Sogefi with any assurances that BASF will continue to ship Materials beyond the end of November.

46. Should BASF carry through on its threat it continue to breach the parties' Agreements, Sogefi will begin to run out of Materials needed to produce automotive parts for its customers on or about November 24, 2021.

47. Sogefi currently estimates that its own customers, the OEMs, will begin to experience shortages and line shutdowns one to three days after the first short shipment from Sogefi.

10

## **BASF's Refusal to Ship Materials Requires Injunctive Relief**

48. Sogefi incorporates the Materials into automotive component parts that Sogefi produces and sells to its OEM customers on a just-in-time basis.

49. Just-in-time delivery in the automotive industry requires that BASF produce and deliver the Materials to Sogefi on a timely basis so that Sogefi can produce and deliver component parts to its OEM customers on a timely basis; otherwise, the entire supply chain falters, reducing or potentially stopping production at Sogefi and its major OEM customers' plants. Such reductions and shutdowns would affect suppliers up and down the supply chain.

50. The just-in-time delivery model that is standard in the automotive industry means that neither Sogefi nor its customers have a sufficient inventory of excess Materials or parts.

51. As BASF is aware, Sogefi requires customer approval for its supply of the Materials. As a result, Sogefi cannot replace BASF with another Materials supplier in time to avoid supply chain disruptions.

52. Because of this just-in-time supply chain, any delay in delivery of the Materials or a delivery of less than the required quantities of Materials can lead to a shutdown of manufacturing up and down the supply chain.

53. BASF knows that abruptly reducing deliveries of the Materials will cause catastrophic harm to Sogefi and its major OEM customers. Indeed, Sogefi advised BASF of this potential harm on several occasions.

54. Such catastrophic harm will include, but is not limited to, Sogefi and its major OEM customers reducing or stopping production for components and vehicles related to the Materials. These production reductions or stoppages would result in Sogefi and its OEM customers sending employees home and incurring hundreds of thousands to millions of dollars per hour in reduction or stoppage costs.

55. Sogefi would also suffer irreparable harm to its goodwill and reputation in the automotive industry in the event BASF reduces delivery of the Materials.

56. Sogefi is left with no recourse but to seek immediate relief from this Court to avoid irreparable harm.

## COUNT I
### Breach of Contract by BASF

57. Sogefi incorporates by reference in this Count I all preceding allegations in this Complaint.

58. Sogefi and BASF have valid and mutually binding contracts that requires BASF to supply Sogefi with all ordered quantities of the Materials at the prices set forth in the Agreements.

59. Sogefi has fulfilled all of its contractual obligations under the Agreements.

60. BASF's failure to timely deliver the ordered quantities of Materials to Sogefi at the prices set forth in the Agreements is a breach of BASF's contractual obligations.

61. Sogefi has or will suffer damages in an amount greater than $75,000 as a result of BASF's breaches, including costs and fees to-be incurred to Sogefi's customers, any resulting alleged liability imposed upon Sogefi by Sogefi's customers, damage to Sogefi's business reputation, and attorneys' fees and costs.

## COUNT II
## Anticipatory Breach of Contract by BASF

62. Sogefi incorporates by reference in this Count II all preceding allegations in this Complaint.

63. In addition to BASF's failure to timely deliver the ordered quantities of Materials to Sogefi at the prices set forth in the Agreements, BASF has anticipatorily breached the parties' Agreements by stating an intent to continue to reduce delivery of the Materials to Sogefi for the next several months.

64. On top of that, BASF's Assistant General Counsel repudiated the parties' Agreements altogether by stating that "Sogefi and BASF have not entered into a contract" and by reiterating this contention in response to Sogefi's

November 5 letter. These statements also constitute a breach by anticipatory repudiation of the Agreements.

65. If BASF does not continue to supply the Materials, Sogefi will be unable to fulfill its obligations to supply its major OEM customers with the Sogefi products into which the Materials are incorporated, and Sogefi will be forced to dramatically reduce or shut down its plant operations relating to the Materials.

66. Similarly, without the finished Sogefi products incorporating the Materials, Sogefi's major OEM customers' production lines related to the vehicles involved will be dramatically reduced or shut down, resulting in numerous idle plants and potential layoffs.

67. BASF would be responsible for the monetary damages for these line shutdowns caused by its breach of the Agreements.

68. Sogefi's ability to locate an alternate supplier and obtain the OEMs' approval before such a shutdown is simply not possible.

69. If BASF carries though on its anticipatory repudiation and does not perform its obligations, Sogefi will have no adequate remedy at law for the harm caused by such breach. The parties expressly agreed that injunctive relief is an appropriate remedy in such a circumstance. (See Ex. 2, §11(b).)

## COUNT III
### Declaratory Judgment

70. Sogefi incorporates by reference in this Count III all preceding allegations in this Complaint.

71. There is an actual case in controversy between the parties for which declaratory judgment is appropriate under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57.

72. BASF has contractual obligations to continue to supply the Materials to Sogefi under the Agreements at the prices agreed upon in the Agreements.

73. Sogefi has fully complied with all of its obligations under the Agreements and has not breached the Agreements.

74. Despite this, and despite the parties' years-long supply relationship, BASF's Assistant General Counsel stated on October 26, 2021 that "Sogefi and BASF have not entered into a contract," and then reiterated that statement on November 10, 2021.

75. The consequence of this disagreement between Sogefi and BASF is significant, as it could result in BASF further reducing or even ceasing shipments of Materials to Sogefi at any moment. The consequence of such an action could be a shutdown of automotive production at each of Sogefi's OEM customers.

76. To avoid this significant public and private harm, and to provide the parties with needed clarity regarding the extent of their contractual obligations,

Sogefi requests a declaratory judgment that the parties' are bound by the Agreements, which require BASF to supply Sogefi with the quantities of Materials as ordered by Sogefi and at the contractual prices.

## Relief Requested

Sogefi requests the following relief from this Court:

A.   Injunctive relief preventing BASF from taking any action inconsistent with its supply obligations to Sogefi under the Agreements;

B.   An order of specific performance and/or mandatory injunction requiring BASF to continue to supply Sogefi with the ordered quantities of the Materials under the Agreements and at the prices agreed upon in the Agreements;

C.   A judgment declaring that the parties' are bound by the Agreements, which require BASF to supply Sogefi with the quantities of Materials as ordered by Sogefi and at the contractual prices;

D.   Monetary damages suffered by Sogefi due to BASF's actions;

E.   An award of attorney's fees and other costs arising out of BASF's breaches under the Agreements (see Ex. 2, §11); and

F.   All other relief as the Court may deem just, equitable or appropriate under the circumstances.

Dated: November 18, 2021     By: */s/Adam T. Ratliff*
                             Michael G. Brady (57331)
                             Adam T. Ratliff (P79892)
                             WARNER NORCROSS + JUDD LLP
                             2715 Woodward Ave., Ste. 300
                             Detroit, Michigan 48201
                             313.546.6000
                             aratliff@wnj.com
                             *Attorneys for Plaintiff*

## Verification

I declare under penalty of perjury that the contents of the foregoing complaint are true and accurate to the best of my knowledge, information, and belief.

Executed on: November 17, 2021

Todd Gregory
Plant Buyer
Sogefi USA, Inc.